IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO. 1:15-331-01-TWT |
| ) | |
| MARKAL CLARK, ) | |
|       Defendant. ) | |
| _____) | |

## DEFENDANT CLARKS'S SENTENCING MEMORANDUM

Comes Now, Defendant, by and through undersigned Counsel, Lawrence J. Zimmerman and hereby files this Sentencing Memorandum in which the Defendant (1) moves this Honorable to grant the minor role as both parties agreed in the plea agreement and think it is appropriate in this case and (2) review the various factors that should be considered in determining what type and length of sentence is sufficient, but is not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553 (a).

### Argument and Citation of Authority

**I.  Presentence Report and Objections**

In the Presentence Report hereinafter referred to as "PSR," the probation officer finds that the defendant is at an adjusted offense level of 18. *See* PSR ¶ 24. With acceptance of responsibility, Mr. Clark's total offense level is 15. *See* PSR ¶ 26. Both parties objected to the probation officer's failure to apply a two-level

1

downward adjustment pursuant to § 3B1.2 (b). The probation officer is of the belief that since Mr. Clark recruited a couple of people into the scheme he is barred or not deserving of the adjustment. However, respectfully, the probation officer is incorrect in her assessment. Per application note 3(c) of § 3B1.2, there is a list of non-exhaustive factors that should be reviewed in making a determination as to whether a person should receive said adjustment. They are the following:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

Mr. Clark's involvement, as the PSR sets out in paragraphs 4-14 was very limited. A review of these factors clearly show Mr. Clark is deserving of at least a 2 level reduction as both the government and the defense asserted. There is no evidence that he knew anything about the scope and structure of the overarching conspiracy, in fact, as mentioned, he was directed to by the unindicted co-conspirator to take different actions at her behest. He spawned none of these criminal acts instead they were all concocted by the unindicted co-conspirator. He

had no role in planning any of the acts or making any decisions regarding the acts of others. While he recruited a couple of people, this was at the request of the unindicted co-conspirator. A more culpable participant, UC-1, recruited Mr. Clark. He is also is being held responsible for other fraudulent acts he did not conduct. He simply, at the behest of UC-1, introduced others, such as Pridgett, to her and she ran the scheme and benefited from it. Mr. Clark is clearly responsible for the deposits into his account totaling $188,000. And, under the relevant conduct analysis he is legally responsible for the additional acts of Mr. Pridgett in the amount of $334, 251.06. *See* PSR ¶ 16. However, this is the reason why a minor role adjustment is warranted since he being held accountable beyond just his specific conduct. *See U.S. v. Rodriguez De Varon,* 175 F. 3d 930, 945 (1999)(Courts should look at (1) defendant's role against relevant conduct held accountable at sentencing and (2) measure the role against other participants if discernable, in that relevant conduct). While he made the introduction of Pridgett to UC-1, he did not direct Mr. Pridgett in any way regarding the fraud involving the Quality account. *See* PSR ¶ 16. Furthermore, under this guideline and the application notes, the mere fact that a defendant recruited one or two people does not prohibit an adjustment under this chapter. A minimal role adjustment may not be appropriate for the actions undertaken but a minor role is fitting. In addition, Mr. Clark did not receive much in the way of a benefit for his undertaking. As the

government stated in their objections to paragraph 22, Mr. Clark received a nominal amount for his actions. Therefore, after reviewing the factors as set out in the application notes this Court should find that Mr. Clark meets the criteria to receive a 2-level downward adjustment.

After receiving a two level adjustment and a one level downward variance as set forth in the plea agreement, Mr. Clark's total offense level is a 12. His guideline range is 10-16 months. He has no criminal history points; therefore, he is in Zone B.

II.   18 U.S.C. 3553 (a) Factors

Since the United States Supreme Court decided *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), a District Court is no longer required to sentence a defendant within the range provided by the Sentencing Guidelines, but is still obligated correctly to calculate that range. Post- Booker sentencing requires two steps. First, the District Court must consult the Guidelines and correctly calculate the range provided by the Guidelines. *See United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). Second, the District Court must consider several factors to determine a reasonable sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law,

and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a); *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam).

There is no better way to delve into the history and characteristics of Mr. Clark, than to review his career in the Army. Mr. Clark is an Army Ranger who has served our country with great honor and vigor until he made these bad choices handing him a federal felony conviction. He has been an Army Ranger who is a master at parachuting. In 2013 alone, he was responsible for ensuring the safety of over 2000 jumpers. *See* Exhibit A (NCO Report 2012-2013 p. 2 of 2). As of 2014, he completed over four hundred jumps. He also received a good conduct medal from the U.S. Army. *See* Exhibit B. A review of his "NCO Evaluation Reports that are attached," Exhibits A and C, show he received marks in all areas that count toward the military's values. He has exhibited loyalty, duty, respect, selfless-service, honor, integrity and personal courage. It was even noted that he exhibited "competence in his duties even under the most extreme circumstances," and "unlimited potential; continue to assign to tough positions of increased

responsibility." *See* Exhibit C (NCO Evaluation Report p. 1 of 2 of 2011-2012 Report.)

Markal Clark did three tours of duty in Afghanistan with the Rangers in 2007, 2010, and 2012. While he was there, he was responsible for fighting and capturing Taliban members. He would obviously embark on dangerous missions. For example, he would conduct night combat missions looking for terrorists by going from house to house. One time, when raiding a home, he was stabbed in the left wrist, and he still has a big scar that is visible.

According to Clark, Afghanistan was a place where he saw terrible things. One time he saw a child suicide bomber kill himself in an attempt to harm others. Interestingly, he says he was never examined for post-traumatic stress disorder. He was also awarded a "Certificate of Achievement" for the historic meeting of the Parliament from the Islamic Republic of Afghanistan. The Special Forces, of which Clark was apart, provided support at Bagram Air Field on May 25, 2010. The certificate says in part, "Your precise professional military performance directly contributed to a most successful meeting of strategic importance and immediate value to Operation Enduring Freedom…" *See* Certificate of Achievement.

From April 2011 to May 19, 2011, he attended the United States Army John F. Kennedy Special Warfare Center and School at Ft. Bragg and graduated with a diploma in the Military Free Fall Jumpmaster program. *See* Certificate from Special Warfare Center and School.

Unequivocally, Markal Clark is a highly dedicated soldier who has excelled in defending his country. As this Honorable Court knows, Ranger school is one of the toughest and most rigorous training courses in which a soldier can volunteer. Not only did Mr. Clark pass Ranger school, he achieved in many other areas in his military career as an Army Ranger. It is unfortunate that he ruined his career with some of the choices he made that are an embarrassment both to him and the uniform he used to don so proudly. His bad acts are not his life's work, and he should not be judged solely on those choices since his good deeds greatly outweigh his misdeeds.

Attached are three letters. There is one from his mother, father and pastor. Mr. Clark, who is ashamed of his actions, did not elaborate to his parents on the details of his crime or the uncertain future he faces. He just asked them to write a short letter.

### III. Sentencing Options

In sum, Mr. Clark has lost his career in the Army he served so faithfully for nearly seventeen years. He has lost the chance to serve the people of this country

during a time that his skill and expertise is needed the most in the global war against terrorism. He wishes he can go back in time and change his bad decisions. He is extremely saddened that he has lost everything he worked so hard to achieve for all of these years. Mr. Clark requests that this Honorable Court sees fit to follow the plea agreement and vary below the guidelines even further and sentence Mr. Clark to either a six-month term of incarceration or 10-16 months of home detention as set forth in §5F1.2. Understandably, Mr. Clark does not fall into Zone A or B, but the guidelines, as noted above, are only advisory and this Honorable Court has the discretion to depart.

                                        Respectfully submitted,

                                        *s/Lawrence J. Zimmerman*
                                        Lawrence J. Zimmerman
                                        Attorney for Defendant
                                        SBN: 785198

30 Trammell Street, SW
Marietta, GA 30064
(404) 351-3000

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the following Defendant Clark's Sentencing Memorandum upon counsel using the ECF system which will automatically send e-mail notification of such filing to opposing counsel.

This the 15th day of December, 2015.

> s/ Lawrence J. Zimmerman
> Attorney for Defendant
> GA Bar No. 785198

Lawrence Zimmerman
30 Trammell St SW
Marietta, GA 30064
404-351-3000